RAÚL R. LABRADOR
ATTORNEY GENERAL
STATE OF IDAHO

Joan Callahan          [ISB No. 9241]
SPECIAL DEPUTY ATTORNEY GENERAL
Nicole R. Robles       [ISB No. 11589]
NAYLOR & HALES, P.C.
Attorneys at Law
950 W. Bannock Street, Ste. 610
Boise, ID 83702
Telephone No. (208) 383-9511
Facsimile No. (208) 383-9516
Email: joan@naylorhales.com; niky@naylorhales.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZEMINA LAKIC, and SEFIKA LAKIC,<br><br>    Plaintiffs,<br><br>v.<br><br>IDAHO DEPARTMENT OF CORRECTION; JOSH TEWALT, in his official capacity, BREE DERRICK, in her official capacity; and JOHN DOES 1-30,<br><br>    Defendants. | Case No: 1:23-CV-00094-BLW<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendants submit the following statement of material facts not in dispute, pursuant to Idaho Local District Civil Rule Civ 7.1(b).

1.    Bajro Lakic ("Lakic") was a prisoner in custody of the Idaho Department of Correction ("IDOC"). He was housed at the Idaho State Correctional Center ("ISCC") from approximately February 2020, until the time of his death on March 24, 2021. On March 6, 2023,

**DEFENDANTS' SOF RE: MSJ - 1.**

a Complaint and Demand for Jury Trial was filed by Zemina Lakic, as Personal Representative of the Estate of Bajro Lakic, and Sefika Lakic, as the legal mother and legal next of kin of Lakic, (together as "Plaintiffs"), alleging that beginning sometime in 2020, Lakic complained about abdominal pain and Defendants failed to meet the applicable standard of care by failing to provide adequate responses to Lakic's complaints of pain, discomfort, and other symptoms. (Dkt. 2, p. 5 ¶ 22.)

2. Syvanna LaBonte is an IDOC Grievance Coordinator at ISCC. In that position she is responsible for processing grievances at the prison. She is knowledgeable about the applicable grievance policies, the prison's system for processing grievances, and whether an inmate submitted grievances in the system. (Declaration of Syvanna LaBonte.)

3. In short, IDOC has adopted an administrative grievance process which was readily available to Plaintiff during the relevant time periods set forth above. In particular, IDOC Standard Operating Procedure 316.02.01.001 (version 4.0), which has been in effect since November 7, 2018, sets forth the IDOC grievance process that Plaintiff was required to follow. (LaBonte Decl. ¶ 3.)

4. The IDOC grievance process has three components: concern, grievance, and appeal. All three parts must be accomplished before exhaustion occurs, as follows.

5. **Offender Concern Form.** If an inmate has an issue they want addressed, they first attempt to discuss the issue with an appropriate staff member. If the issue is not resolved, the inmate may then submit an Offender Concern Form directed to the staff member most capable of responding to and, if appropriate, resolving the issue. (LaBonte Decl., ¶ 5.)

6. **Grievance Form.** If the issue is not resolved informally, the inmate may, within 30 days of the incident or problem, obtain and file a formal grievance, using the Grievance/Appeal

**DEFENDANTS' SOF RE: MSJ - 2.**

Form. An extension of time may be granted by the reviewing authority.

      a.      The Grievance Form must contain specific information, including the nature of the complaint, dates, places, and names, and can only raise one specific issue per grievance.

      b.      The inmate must suggest a solution to the issue. Upon receipt of a grievance, the Grievance Coordinator enters the grievance information into the electronic database (formerly CIS, now ATLAS), which is an electronic database used to log offender grievances and grievance appeals.

      c.      All grievances can be seen and accessed through the database even if a grievance is filed at a different facility.

      d.      The Grievance Coordinator determines if the grievance form is completed correctly. If the form is completed correctly, the grievance is entered into the database and then assigned to the staff member most capable of responding. If the form is completed incorrectly it is returned to the offender using the Grievance Transmittal Form, where the inmate may then correct the grievance for processing.

      e.      The Grievance Coordinator assigns the correctly completed grievance to the staff member most appropriate to respond.

      f.      The staff member must answer and return the grievance to the Grievance Coordinator within 14 days. The Grievance Coordinator then logs in the information in the database. This is the Level 1 – Initial Response.

      g.      The information is then forwarded by the Grievance Coordinator to a reviewing authority, who is usually a deputy warden. Within 16 days of receiving the grievance from the Grievance Coordinator, the reviewing authority must review the grievance, the staff member's response, as necessary any applicable rules, policies, SOPs, etc. and may either deny,

**DEFENDANTS' SOF RE: MSJ - 3.**

modify, or grant the offender's suggested solution. The reviewing authority then returns the grievance to the Grievance Coordinator, who logs the response in the database. This is the Level 2 – Reviewing Authority Response. (LaBonte Decl., ¶¶ 6-7.)

7. **Appeal Form.** If the inmate is not satisfied with the grievance response, he may file an appeal within 14 days of receiving the response, using the Grievance/Appeal Form, but with the appeal section marked and filled out appropriately.

    a. The appellate authority then has 16 days from receipt to draft a response and return it to the Grievance Coordinator, who logs the response in the database.

    b. The Grievance Coordinator forwards the printed grievance forms and the offender's original attachments to the inmate.

    c. The Grievance Coordinator also files in the facility administration area a copy of the printed grievance, the copy of the Grievance/Appeal Form, and copies of all attachments.

8. Upon completion of all three steps, i.e., the Offender Concern Form, the Grievance Form, and the Appeal Form, the grievance process is exhausted. (LaBonte Decl., ¶¶ 8-11.)

9. As the Grievance Coordinator at ISCC, Ms. LaBonte has accessed and reviewed Bajro's IDOC grievance records at ISCC, which are kept in the ordinary course of the prison's regularly conducted business activities. As is reflected in Bajro's Offender Grievance Listing, Bajro only submitted one grievance addressing one issue while in custody of the IDOC. There are no grievance records relating to the alleged stomach pain or other medical issues. (LaBonte Decl., ¶¶ 12-14.)

10. Plaintiff had access to concern forms and grievance forms and there is no indication he did not know how to use the grievance process at ISCC. In fact, he filed one grievance regarding

**DEFENDANTS' SOF RE: MSJ - 4.**

the inability to take group photos and shirtless photos. There is also no indication that he was prevented from using the grievance process. (LaBonte Decl. ¶¶ 15-16.)

DATED this 26th day of April, 2023.

NAYLOR & HALES, P.C.

By: */s/ Joan E. Callahan*
JOAN E. CALLAHAN, Of the Firm
Attorneys for Defendants IDOC, Tewalt, and Derrick

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of April, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

- Greg Chaney          efile@gregchaneylaw.com
  Nick Bronk
  Malissa Nielson
  *Attorneys for Plaintiffs*

*/s/ Joan E. Callahan*
JOAN E. CALLAHAN

**DEFENDANTS' SOF RE: MSJ - 5.**